Carole WALK, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (U.S. AIR, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 23, 1994.

Decided May 22, 1995.

---

**5.** Because we have held that the principle of preemption applies, we need not reach the

Board's second issue.

Lisa J. Buday, for petitioner.

John P. O'Connor, for respondent.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Carole Walk (claimant) appeals from an order of the Workmen's Compensation Ap-

 

peal Board. The board affirmed a referee's decision to suspend benefits pursuant to The Pennsylvania Workmen's Compensation Act (Act).[1] We affirm.

This matter commenced when U.S. Air, Inc. (employer) filed a petition for termination of claimant's benefits, alleging that claimant had no residual or permanent disability as a result of her work injury or, alternatively, that work was available to claimant. Claimant subsequently denied the material allegations set forth in employer's petition, and hearings before a referee ensued. The referee made the following findings of fact:

1. On April 11, 1990, this 47 year old claimant was employed by [the employer] as a reservation agent which job involved considerable keyboard work.

2. On September 27, 1990 a notice of compensation payable issued providing:
   a. that the date of injury was April 11, 1990;
   b. that claimant's weekly disability rate was $419; and,
   c. the nature of the injury was described as "carpal tunnel, both wrists."

. . . .

3. The claimant had surgery on her right wrist but surgery was not performed on the left hand. About five weeks after surgery claimant returned to work to a part time [sic] job. Working four hours a day at the same duties as her pre-injury job [sic]. The claimant alleged that her condition became progressively worse and the defendant eliminated the part-time position on April 8, 1991.

4. A supplemental agreement dated April 23, 1991 was executed stating that claimant's disability of April 11, 1990 recurred.

5. On December 12, 1991 [employer] filed a petition to terminate compensation as of November 14, 1991 with a supersedeas request alleging that claimant had no residual or permanent disability due to her work injury; or, in the alternative that work was available for the claimant.

Claimant filed a responsive answer denying the material allegations of the petition.

7. By referee's interlocutory order of March 24, 1992, supersedeas was granted.

8. In support of its petition the defense offered the deposition testimony of Dr. E. Andrew Wissinger, a board certified orthopedic surgeon, taken on February 7, 1992. Dr. Wissinger examined the claimant on two occasions, May 9, 1991 and November 14, 1991. When he first saw the claimant she had already undergone a carpal tunnel release of her right median nerve on June 22, 1990 by a Dr. Mantica and Dr. Wissinger's first examination was eleven months post surgery. He testified as to the claimant's complaints and as to his examination of the claimant's right and left hands. The doctor had also reviewed certain medical reports and electrical studies done prior to the surgery which indicated entrapment of the median nerve in both hands. As a result of his examination on the first occasion, Dr. Wissinger diagnosed that the right hand had recovered without impairment and based on the electrical studies that there was entrapment of the median nerve of the left hand which was untreated. He indicated that he felt it was time to perform surgery on the left hand if required. At the time of his second examination of the claimant he reviewed the claimant's complaints and performed a similar examination. As a result of the examination, the doctor stated:

> "There was no objective evidence of impairment in either hand. The right hand has recovered without impairment and the left hand, although untreated, is not impaired."

The doctor stated that although he had no reason to believe the entrapment in the left hand no longer existed, because of the time lapse, if the untreated hand, the left hand, were really a problem,

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77   P.S. § 1–1031.

there would have been objective signs of loss. The doctor stated that in his opinion, the condition of the claimant's hands would not prevent her from returning to her pre-injury employment for the [employer].

9. Dr. Wissinger went further to opine that the claimant's carpal tunnel syndrome pre-existed her work injury of April 11, 1990 when she fell at work. The doctor opined that this was an aggravation of a pre-existing non-work-related condition. The doctor stated that he agreed with claimant's physician, Dr. Imbriglia, "... with everything except assessment that she is disabled." He stated that even Dr. Imbriglia apparently felt that there were insufficient problems in the left hand to operate on it. Concerning the examination the doctor stated:

> "... we have a lady who is nineteen months from the time of her injury, she has one hand operated upon and by this time she is not complaining of anything that even vaguely resembles carpal tunnel syndrome."

> "She has a whole new set of complaints and problems in that hand and the other hand has never shown any objective signs of any median nerve dysfunction except the test."

> "And the man who has been looking after her this whole time hasn't felt that the left hand is having enough problems to operate on it. All we have left is a lady with no objective signs in her left hand, a bunch of strange things in her right hand that nobody can explain and a positive test nineteen months, doesn't add up."

> "She either has trouble that it shows itself, or she doesn't have enough trouble and she is ready to go."

The doctor opined that the claimant should return to her work and if her problems recur, that would be the time to consider a change of job because "... you've exhausted all your therapeutic possibilities."

10. Dr. Wissinger released the claimant to her pre-injury employment as of November 14, 1991; and, claimant was notified of the release to return to full duty work by one Sharon L. Carpenter, Workers' Compensation analyst for the [employer] by letter of December 4, 1991.

. . . .

13. The claimant testified that she was made aware of Dr. Wissinger's release of her to full duty by the Sharon Carpenter letter [but] maintained she could not perform the job and that her physician had not released her for the job. . . .

. . . .

16. As of November 14, 1991 claimant had recovered to the point that she could resume her pre-injury employment according to Dr. H. Andrew Wissinger, whose testimony the referee found to be the most credible medical testimony as to the claimant's physical ability to return to her pre-injury employment as of that date.

. . . .

18. Claimant still had a residual carpal tunnel of the left hand which would not have prevented her from returning to her pre-injury employment.

19. Claimant was not notified of the November 14, 1991 release by Dr. Wissinger for the claimant to return to her pre-injury employment until Wednesday, December 4, 1991 by letter of Sharon L. Carpenter. Allowing a reasonable time for mailing, claimant could not have been expected to return to work until Monday, December 9, 1991.

Based on these findings, the referee concluded that employer had failed to sustain its burden of proving that all disability relating to the April 11, 1990 work injury had ceased as of November 14, 1991; therefore, the employer was not entitled to termination of compensation.[2]

2. In a case involving a termination petition, the employer has the burden of proving that all dis-

The referee further concluded that the employer established that claimant's condition had improved to the point that she could return to her pre-injury employment on November 14, 1991, at a wage equal to or in excess of her pre-injury employment. In addition, the referee determined that claimant was advised of the availability of her position as well as her medical release in sufficient time to return to work on December 9, 1991. Based on these conclusions, the referee suspended claimant's benefits as of December 9, 1991.[3]

Both claimant and employer appealed the referee's decision to the board, which affirmed the decision of the referee. This appeal by claimant followed.

■ On appeal to this court, claimant presents one issue for our review: whether the evidence presented was sufficient to support a suspension of compensation benefits, as no evidence was submitted to establish that work was available to claimant, or if so, at what rate of earnings.

■ Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, appeal board procedure was violated, and whether necessary findings of fact were supported by substantial evidence. *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995). Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Mrs. Smith's Frozen Foods Co. v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa.Commonwealth Ct. 382, 539 A.2d 11 (1988). Where, as here, the board takes no additional evidence, the referee's determinations as to witness credibility and evidentiary weight are conclusive. *See Butler v. Workmen's Compensation Appeal Board (Commercial Laundry, Inc.)*, 67

Pa.Commonwealth Ct. 393, 447 A.2d 683 (1982).

■ In proceedings concerning the suspension of benefits, the burden of proof is upon the employer. *Foyle v. Workmen's Compensation Appeal Board (Liquid Carbonic I/M Corp.)*, 160 Pa.Commonwealth Ct. 534, 635 A.2d 687 (1993), *petition for allowance of appeal denied*, 538 Pa. 660, 648 A.2d 791 (1994). An employer is entitled to suspension of benefits if claimant's disability has decreased to a point that claimant can perform the pre-injury job or another job without loss of earnings and if such work is available. *Columbo v. Workmen's Compensation Appeal Board (Hofmann Industries, Inc.)*, 162 Pa.Commonwealth Ct. 307, 638 A.2d 477 (1994). Unequivocal medical testimony that claimant is still partially disabled, but may return to work supports a suspension of benefits. *Brown v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 134 Pa.Commonwealth Ct. 31, 578 A.2d 69 (1990).

In the present matter, claimant contends that employer failed to satisfy its burden of establishing job availability. Essentially, claimant argues that the letter that she received from Sharon L. Carpenter, employer's worker compensation analyst, did not constitute a job offer. The following is the body of the letter:

We have been advised that you were released to return to full duty work following your examination with Dr. Wissinger on 11-18-91.

Therefore, I would suggest that you contact Pete Burns, at the Pittsburgh Reservation Office as soon as possible and make arrangements for your return to work. If you have any questions regarding this mat-

---

ability resulting from the work-related injury has ceased. *Williams v. Workmen's Compensation Appeal Board (Montgomery Ward)*, 127 Pa.Commonwealth Ct. 587, 562 A.2d 437 (1989).

**3.** In accordance with section 413 of the Act, 77 P.S. § 772, the referee may "take the appropriate action as indicated by the evidence...." *Bell Telephone Co. of Pennsylvania v. Workmen's Com-*

*pensation Appeal Board (Rothenbach)*, 98 Pa.Commonwealth Ct. 332, 335, 511 A.2d 261, 262 (1986). Thus, the referee may suspend benefits where the facts indicate that suspension is the proper remedy. *Mardis v. Workmen's Compensation Appeal Board (Malsbary Manufacturing)*, 145 Pa.Commonwealth Ct. 394, 603 A.2d 672 (1992).

ter, please do not hesitate to contact the undersigned.

Exhibit C, Reproduced Record (R.) at 167a.

Claimant argues that the letter merely "suggests" that she contact another representative of U.S. Air to make arrangements for her return to work. She contends that the letter provides no indication that Ms. Carpenter was authorized to offer work to claimant.

Claimant further asserts that if Mr. Burns did, in fact, have a position available to her, a number of questions remain unanswered. Essentially, claimant argues that she received no information concerning the nature of the position, the hours, and the amount of remuneration. Claimant contends that these perceived deficiencies in the letter warrant reversal. Alternatively, she argues that the case should be remanded so that the issues she has raised may be clarified through the presentation of additional evidence. We disagree.

■■■ Claimant appears to have confused her situation, which involves an offer to return to work, with a situation involving a referral to a different position. Where a claimant is referred to a different job, the referral must contain information specific enough to ensure that the job is within claimant's capabilities. *See, e.g., Four-way Construction Co. v. Workmen's Compensation Appeal Board (Snyder),* 113 Pa.Commonwealth Ct. 235, 536 A.2d 873 (1988). Nevertheless, employer correctly points out that such situations are not analogous to this case. Where, as here, claimant is medically released to return to a pre-injury position, the referral need not contain information that claimant should possess as a result of prior work experience. *See Braun Baking Co. v. Workmen's Compensation Appeal Board (Stevens),* 136 Pa.Commonwealth Ct. 499, 583 A.2d 860 (1990).

■■■ Furthermore, the record supports the conclusion that employer satisfied its burden of establishing job availability. With respect to claimant's arguments regarding the adequacy of the referral, we believe that the language in the letter was sufficiently clear to convey that full duty work was available.

■■■ Once employer has satisfied its burden, claimant then must demonstrate that he or she has acted in good faith by following through with the job referrals. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987). Here, the referee properly concluded that claimant failed to satisfy this burden. This conclusion is supported by the following excerpt of claimant's own testimony:

Q  You were contacted following an examination by Dr. Wissinger by Sharon Carpenter, through a letter of December 4, 1991; is that correct?

A  I was. I was delighted. I thought they had modified it or that I'd be able to go back with something else?

Q  But you were informed that you were released to do full-duty work; is that correct?

A  Yes.

. . . .

Q  In any event, after you received [the letter from Sharon Carpenter], did you talk to your own doctor about whether you should try returning to work?

A  Yes, I've been in constant—I've doctored constantly.

Q  And your doctor is Dr. Imbriglia?

A  Dr. Imbriglia.

. . . .

Q  Do you feel you would be able to go back and perform the duties of a Reservation Sales Agent on an eight-hour, full-time basis?

A  No, sir.

Q  Why not?

A  Because it involves the typing. I cannot type. It's not that I won't. I can't.

R. at 45a–47a.

This testimony indicates that claimant did not make a good faith effort to follow through with the job referral. Her belief that she cannot type does not relieve her of this obligation. As stated previously, Dr.

Wissinger testified that claimant was physically capable of returning to her pre-injury position, and the referee found this testimony to be credible. Furthermore, the record contains no evidence that claimant made any effort to respond to Sharon Carpenter's letter.

Thus, our review of the record reveals that employer satisfied its burden of proving that there was a job available to claimant. Accordingly, the decision of the board is affirmed.

## ORDER

NOW, this 22nd day of May, 1995, the order of the Workmen's Compensation Appeal Board, dated August 5, 1994, at No. A93–1473, is affirmed.

