**STATE WORKMEN'S INSURANCE FUND and OEM/Erie, Inc., Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HOOVER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted May 10, 1996.
Decided July 16, 1996.

---

Rhonda A. Rudman, for Petitioner.

John W. Draskovic, for Respondent.

Before COLINS, President Judge, FLAHERTY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

OEM/ERIE, INC. (Employer) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) that reversed a decision by a Workers' Compensation Judge (WCJ) that denied a termination of Dorothy Hoover's (Claimant) disability benefits, but granted a modification petition pursuant to the Workers' Compensation Act (Act).[1]  We reverse.

Claimant suffered an injury to her left forearm on February 28, 1989, while working for Employer.  She received compensation benefits pursuant to a notice of compensation payable at the rate of $162.00 per week.  On August 26, 1991, Employer filed a petition to terminate or suspend benefits alleging Claimant fully recovered from her injury. Claimant denied these allegations and hearings were held before a WCJ, who found that Claimant had sufficiently recovered so as to be capable of performing light or medium duty employment which did not involve repetitive use of her left arm.  The WCJ found as follows:

> 3.  Based upon a careful review of the entire record in this case, your Workers'

1.  Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

Compensation Judge believes and finds as fact that:

. . . .

c. The Claimant was referred to a suitable position as a telemarketer position with A & M Hearing Aid Centers (hereinafter "A & M") which was available March 1, 1991, as a full time position which would have paid her at least $160.00 per week;

d. The Claimant appeared for an interview at A & M on March 13, 1991, but effectively sabotaged that interview when she advised that potential employer that she could not guarantee that she would appear for work every day due to her injury, and consequently she was not offered that position;

e. The Employer then made a suitable job available for the Claimant as a "line loader" beginning June 19, 1991, which was a full time position which would have paid the Claimant $190.00 per week;

f. The Claimant reported for work for two (2) hours on June 19, 1991, using only her right arm, but then advised her supervisor that she was unable to perform the job and she left the premises;

g. The Employer next made a sedentary job available to the Claimant as a "line observer", starting July 1, 1991, which would have paid her $190.00 per week and would merely require that she watch an assembly line and summon help in the event that she observed any problems, however the Claimant never received notice of that job because she did not accept delivery of any of the three (3) notice letters which the employer sent to her;

h. The Claimant has not responded in good faith when notified of the availability of suitable employment opportunities beginning March 1, 1991;

i. The Claimant had an actual earning capacity of $160.00 per week beginning March 1, 1991, and then $190.00 per week beginning June 19, 1991.

(WCJ's Decision, pp. 3–4.)

In reaching the above findings the WCJ found the testimony of George M. Bohatiuk, M.D., Louis J. Iorio, M.D., and Nadine L'Amoreaux, Employer's rehabilitation consultant, to be credible and convincing. The WCJ rejected most of the testimony of Claimant and John J. Euliano, Jr., M.D., her treating physician, as not credible and not worthy of belief. Accordingly, the WCJ ordered a modification effective March 1, 1991, and then a suspension of Claimant's benefits as of June 19, 1991.

The issue raised by Claimant on appeal to the Board was whether her statements in the interview with A & M constituted a bad faith effort in following through on a job referral. The Board answered this issue in the Claimant's favor, concluding that her statements did not evidence an intent to sabotage the employment opportunity.

Employer appealed to this Court[2], raising issues concerning the Board's scope of review over a WCJ's decision, whether the conduct of the Claimant in her interview with A & M constituted substantial evidence of job sabotage, whether Claimant made a good faith effort in pursuing the "line loader" position, and whether Claimant's failure to accept notice of the "line observer" was done in bad faith.

The Board's scope of review is limited to a determination of whether the evidence as a whole supports the WCJ's findings. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa. 322, 652 A.2d 797 (1995). Credibility determinations and the weight to be accorded to various statements are exclusively the province of the fact finder, the WCJ, and are conclusive when, as here, the Board takes no additional evidence. *Walk v. Workmen's Compensation Appeal Board (U.S.Air, Inc.),* 659 A.2d 645 (Pa.Cmwlth. 1995). As such, findings of fact will be over-

---

2. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988).

turned only where they are arbitrary and capricious. *Lehigh.* Furthermore, the party that prevailed before the WCJ is entitled to all favorable inferences that can be drawn from the evidence. *Krumins Roofing & Siding v. Workmen's Compensation Appeal Board (Libby),* 133 Pa.Cmwlth.211, 575 A.2d 656 (1990).

The basis of the controversy rests in the guidelines set forth by the Supreme Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987). The *Kachinski* guidelines are stated as follows:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the Claimant has been given medical clearance, e.g., light work, sedentary work, etc;

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s);

4. If the referral fails to result in a job, then claimant's benefits should continue.

*Id.* at 252, 532 A.2d. at 380.

Claimant does not contest that Employer has met the burden of the first two *Kachinski* prongs for both the A & M position and the "line loader" position. Claimant does aver that the failure of notice for the "line observer" position constitutes a failure of the second prong concerning job availability. The Court will first address the A & M position that was made available to Claimant.

■ Willful sabotage by a claimant of an employment opportunity constitutes a bad faith effort and, as such, a failure of the third prong of the *Kachinski* test. *Munroe v. Workmen's Compensation Appeal Board (H & G Distributing Co.),* 151 Pa.Cmwlth.465, 617 A.2d 88 (1992), *petition for allowance of appeal denied,* 536 Pa. 634, 637 A.2d 294 (1993). Claimant is correct in the proposition that speaking honestly with a prospective employer, about medical limitations im-

posed by a treating physician, is acting in good faith. *Vipond and Vipond, Inc. v. Workmen's Compensation Appeal Board (McKowan),* 148 Pa.Cmwlth.373, 611 A.2d 368 (1992), *petition for allowance of appeal denied,* 533 Pa. 616, 618 A.2d 405 (1992). However, in the instant case, what Claimant described was not a medical limitation imposed by her treating physician, but Claimant's own subjective belief of her abilities. In *Vipond,* what was proscribed were restrictions on sitting for certain periods which were specifically imposed on claimant by his treating physician, who was later found to be not credible. The court was concerned with having the claimant be the initial arbiter for the credibility of medical limitations imposed by the treating physician. The court held such a standard to be unreasonable, and found the claimant to have acted in good faith. In the instant case, the treating physician placed a medical limitation on Claimant concerning the restricted use of her left arm; however, being unsure about an ability to show up for work every day was Claimant's own assessment.

The more applicable case is that of *Walk.* In *Walk,* the employer's physician had released the claimant for full time, pre-injury employment. The claimant failed to return to that job due to her honest belief that she could not type. The court ruled that the claimant's belief did not relieve her of the obligation to follow through on a job with a good faith effort, thus constituting a failure of the third *Kachinski* prong. Moreover, the physician, found credible by the fact finder, testified that the claimant was physically capable of returning to work. *Walk.*

The analogy to *Walk,* with respect to the claimant's belief in her typing failures, and in the instant case, with respect to Claimant's belief in her ability to be present for work, is clear. In both cases the claimants substituted their own subjective beliefs in the absence of specific medical limitations; this negates the applicability of *Vipond.* This Court also notes the WCJ's determination that Claimant was not found to be credible. As such, this Court's discretion in evaluating the allegedly honest intentions of Claimant are severely limited. Therefore, Claimant's statements to

A & M regarding her ability to perform the work constituted a bad faith effort in pursuing the job referral and was a failure of her burden in *Kachinski*.

■ The next issue concerns whether Claimant failed to follow through with the "line loader" position in good faith. In Employer's brief to this Court, the undisputed fact that Claimant reported to work for two hours on June 19, 1991, is reiterated. Employer makes no argument as to whether two hours constituted a good faith effort. Claimant argues that her subjective pain in attempting the "line loader" position was too great. While this Court is concerned with what seems to be the less than sedentary nature of the "line loader" position, we are obligated to adhere to the credibility determinations of the WCJ. Therefore, this Court cannot support Claimant's averments as to her inability to perform the "line loader" position.

■ Finally, Employer argues that Claimant's failure to accept the certified notice letters of the "line observer" position constituted bad faith. However, Employer, in its brief to this Court, has failed to address Claimant's argument that Employer failed the second prong of *Kachinski*, when the Claimant never received the notice. Employer only offers a summarized reiteration of the record to support its position that the second prong was met, but makes no legal argument and cites no case law as to what constitutes "notice" of a referral. When notice of a referral is received and Claimant makes no effort to pursue it, then that is bad faith. What is at issue here is whether the sending of three certified notice letters satisfies the second prong of *Kachinski*, despite Claimant's failure to accept them.

This Court has previously accepted the theory of constructive notice of a job referral to a claimant. *Chavis v. Workmen's Compensation Appeal Board (Port Authority of Allegheny County)*, 142 Pa.Cmwlth.445, 598 A.2d 97 (1991), *petition for allowance of appeal denied*, 530 Pa. 661, 609 A.2d 169 (1992).

In *Chavis*, the court held that constructive notice of a job referral existed when the claimant failed to notify the employer of a change of address. The court quoted the board as saying, " '[i]t is certainly not unreasonable to expect the Claimant to notify his employer of a change of address, or, at a minimum, pick up and read his mail, neither of which should prove to be an onerous burden to the Claimant.' " *Id.* 598 A.2d at 99. Similarly, in the instant case, it is not unreasonable to expect Claimant to have received one of three certified letters, especially with as many potential receivers as there were in Claimant's crowded home.[3] Claimant avers that she never refused any certified mail, but with the credibility determinations made by the WCJ, this Court may not consider such statements.

We, therefore, conclude that the Board incorrectly infringed on the finality of the WCJ's credibility determinations. As such, Claimant's actions sabotaged her employment opportunity with A & M; the Board ignored the WCJ's credibility determinations in relation to the "line loader" position; and Employer met its burden in providing notice of a job referral for the "line observer" position.

Accordingly, the Board's order is reversed and the order of the WCJ is reinstated.

### ORDER

NOW, July 16, 1996, the order of the Workmen's Compensation Appeal Board, dated October 27, 1995, at No. A94–2887, is reversed and the order of the Workmen's Compensation Judge is reinstated.

---

**3.** Claimant's own brief to this Court notes her residence houses two families, one upstairs and one downstairs.