**COUNTY OF DELAWARE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (STALLWORTH), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 1, 1999.

Decided Oct. 1, 1999.

---

Robert F. Kelly, Jr., Media, for petitioner.

Sam S. Auslander, Collingdale, for respondent.

Before PELLEGRINI, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

PELLEGRINI,[1] Judge.

The County of Delaware (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) granting the review petition and penalty petition filed on behalf of Willie Stallworth (Claimant). As a result of Claimant's death due to suicide, the WCJ also granted Employer's termination petition.

Claimant worked for Employer as a prison guard at the Delaware County Prison in Thornton, Pennsylvania. At approximately 3:15 a.m. on February 20, 1993, Claimant was escorting a prison nurse upstairs when he slipped and fell down 28 concrete steps, incurring multiple injuries including severe closed-head trauma. Claimant filed a claim for workers' compensation and Employer issued a Notice of Compensation Payable (NCP) describing Claimant's injuries as "contusion—head, back, neck." Employer began paying Claimant $399.78 based on an average weekly wage of $599.67. On September 27, 1993, Employer filed a termination petition alleging that Claimant's disability

had ceased as of August 13, 1993, and that his former position was available. Claimant filed a penalty petition alleging that Employer had failed to pay $18,841.05 in medical bills related to the work injury. He also filed a review petition requesting the NCP be amended to include an injury to the left knee and mental disorders, including major depression secondary to head trauma.

At the hearing before the WCJ, Claimant testified that prior to his injury, he had no trouble with his knee, that he was able to perform all of the required functions of a prison guard, and that he had a lot of friends and enjoyed socializing; however, since the accident, he had continuing problems with his knee, and lost all interest in bathing and going out with his friends. Claimant's wife also testified that Claimant was well liked and very sociable before the accident, but that after the accident, he needed help showering and did not care about his appearance, sat around the house all day, and had no interest in anything.

Claimant also offered the medical testimony of Jon Fisher, M.D. (Dr. Fisher); John Boor, M.D. (Dr. Boor) and Samuel Romirowsky, M.D. (Dr. Romirowsky). Dr. Fisher, Claimant's treating physician, first examined Claimant on August 25, 1993, at which time he diagnosed Claimant's knee problem as post-traumatic synovitis of the left knee and stated that the problem was causally related to Claimant's February 1993 work injury. He opined that as a result of Claimant's condition, he could not return to his pre-injury job as a corrections officer. He further testified that he referred Claimant to Dr. Boor for treatment of headaches and numbness in his knee region.

Dr. Boor, Claimant's treating neurologist, testified that he examined Claimant on September 7, 1993, and opined that he was suffering from post-traumatic headache, port-traumatic vertigo, concussion, post-concussion syndrome, post-traumatic

---

encephalopathy, lumbar radiculopathy and a herniated lumbar disc. Dr. Boor also stated that Claimant's condition was causally related to his work injury and opined that due to his condition, he was not capable of returning to his job.

Dr. Romirowsky, Claimant's treating psychologist, testified that he examined Claimant on August 27, 1993, and took a history from both Claimant and his wife. He stated that both Claimant and his wife told him that Claimant had undergone dramatic personality changes after the February 1993 work injury, including not caring about his personal appearance or hygiene, having lower energy levels, wandering around the neighborhood, and having some sexual dysfunction and disinterest. Dr. Romirowsky diagnosed Claimant as suffering from major depression and stated that Claimant's work injury caused him to suffer permanent organic brain damage. He concluded that the work injury caused a head trauma that aggravated or exacerbated a pre-existing condition of depression or psychiatric illness. He also stated that the work accident directly caused Claimant's mental disorders and that Claimant was not capable of returning to work as a correctional officer.

Employer offered the medical testimony of Stuart Gordon, M.D.; Bruce Grossinger, D.O. and Andrew Borson, M.D. Dr. Gordon, a board-certified orthopedic surgeon, testified that he examined Claimant on March 23, 1993, when he came to him with complaints of left knee pain. Dr. Gordon stated that although Claimant denied having any pre-existing problems with his left knee, he had notes from a previous treating physician regarding a left knee injury Claimant sustained in the summer of 1991 when he was involved in a bus accident. Dr. Gordon further stated that he saw Claimant again on May 11, 1993, and at that time sent him for an arthrogram. Although the results of that test indicated that Claimant had a tear of the posterior horn of the medial meniscus, Dr. Gordon could not say with any medical certainty when the tear occurred but that it was possible it could have happened prior to his fall down the prison steps. Dr. Gordon concluded by stating that he performed surgery on Claimant to repair the tear, and that after his rehabilitation, Claimant was fully recovered and able to return to his job without any restrictions.

Dr. Grossinger, a board-certified neurologist, testified that he examined Claimant on several occasions and had various tests (CAT scans, EEGs, brain stem testing) performed to determine if Claimant was suffering a head injury. Ultimately, Dr. Grossinger concluded that Claimant had a completely normal neuropsychological evaluation, had fully recovered from his closed head injury and was entirely normal based on the tests that he performed.

Dr. Borson, a board-certified neuropsychologist, testified that he examined Claimant three times and conducted a psychological evaluation as well as numerous other tests. Dr. Borson stated that based on Claimant's test results that were contradictory, he believed that Claimant was attempting to give him the impression that he had an organic brain syndrome when he did not, and that he was attempting to present himself as psychotic when he may or may not have been. It was Dr. Borson's opinion that Claimant was malingering.

Before the WCJ issued his decision, Claimant committed suicide on August 23, 1996. In his November 6, 1997 decision, the WCJ accepted as credible the testimony of both Claimant and his wife. As to the medical evidence presented, the WCJ found the testimony of Claimant's medical experts credible that his injuries to his left knee were related to his work injury, and that until his death, Claimant also suffered several psychiatric disorders, including depression, post-concussion syndrome, post-traumatic headaches, post-traumatic vertigo, and post-traumatic Bickerstaff's variant of migraine. The WCJ then granted Claimant's review petition as to his left knee and psychiatric injuries. He also

granted Claimant's penalty petition and assessed Employer a 20% penalty on all outstanding medical expenses with 10% interest and 20% attorney's fees. As a result of Claimant's death, the WCJ granted Employer's termination petition as of August 23, 1996. Employer appealed to the Board that portion of the WCJ's decision granting Claimant's petitions. The Board affirmed the WCJ's decision but modified the penalty by deleting the 10% interest award and reversing the WCJ's award of attorney's fees against Employer. This appeal by Employer followed.[2]

### I.

■ Employer contends that the WCJ's findings that Claimant's left knee and psychological injuries resulted from the February 20, 1993 work injury were not supported by substantial evidence. Employer argues that Claimant had pre-existing problems with his left knee as well as pre-existing mental disorders. In effect, Employer is arguing that the WCJ should have believed its witnesses, not Claimant's. As we have stated, ad nauseum, the law is well-settled that determinations as to credibility and the weight to be given to the evidence are within the exclusive province of the WCJ as fact finder, and are conclusive where, as here, the Board takes no evidence. *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Hoover)*, 680 A.2d 40 (Pa.Cmwlth. 1996). It was well within the sole purview of the WCJ to choose to accept the testimony of Claimant's medical witnesses, Drs. Fisher, Boor and Romirowsky as more credible that that of Employer's medical witnesses, Drs. Gordon, Grossinger and Borson. As such, the WCJ's findings that Claimant's left knee injury and psychiatric illnesses were causally related to his work injury are supported by substantial evidence and we will not disturb that determination on appeal.[3]

### II.

Employer also argues that the WCJ erred in assessing 20% penalties on Claimant's outstanding medical bills because it had not acknowledged either Claimant's psychiatric injuries or left knee injury in the NCP.[4] Regarding the psychiatric injuries, our Supreme Court recently held in

---

2. Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether errors of law have been committed or whether constitutional rights have been violated. *Sears, Roebuck & Co. v. Workers' Compensation Appeal Board (Lear)*, 707 A.2d 618 (Pa. Cmwlth.1998).

3. Employer also argues that the WCJ erred by not making findings of fact and conclusions of law regarding a utilization review petition concerning Claimant's left knee injury. Employer contends that it filed a utilization review petition on November 18, 1994, regarding the reasonableness of Dr. Fisher's treatment of Claimant's left knee.

   However, there is no indication that the utilization review petition had been decided or appealed. Additionally, such a petition was not listed in the docket entries, was never discussed by the WCJ or the Board, and Employer does not allege that the WCJ failed to rule on its utilization review petition. Even assuming that Employer properly filed a utilization review petition, the WCJ's failure to rule on it was not raised before the Board and has not been preserved for appeal. Pa. R.A.P. 302. As such, that issue is waived.

4. Additionally, Employer argues that the WCJ erred by awarding a penalty to the deceased Claimant's estate. It contends that because there was no evidence that an estate was ever raised, and Claimant committed suicide and was no longer entitled to receive compensation, that the WCJ could not order payment of penalties to anyone. However, as correctly noted by the Board, although Claimant died intestate, he was survived by Shirley Stallworth, his wife of 18 years, and, therefore, by law had an estate. See 20 Pa.C.S. § 2102 of the Probate, Estate and Fiduciary Code. Moreover, an award of penalties is based upon Employer's violation of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, § 1–1041.4, and is not conditioned upon the claimant's continued entitlement to compensation. *See* Section 435(3)(i) of the Act, 77 P.S. § 991(d)(i) (Board has power to impose penalties for violations of the Act). As such, Employer's argument is without merit.

*Commercial Credit Claims v. Workers' Compensation Appeal Board (Lancaster)*, 556 Pa. 325, 728 A.2d 902 (1999), that an employer is not required to pay medical bills for a psychiatric injury when the original NCP does not include it as one of the enumerated injuries. Correspondingly, it held that until a claimant establishes that a mental condition existed, penalties cannot be awarded for an employer's failure to pay medical bills for that injury. In determining that the employer does not have the burden to disprove the connection between the physical injury and the mental condition, our Supreme Court stated:

> Although the conclusion that we reach today is plainly dictated by the relevant statutory provisions, we note also that sound considerations of policy militate heavily in favor of this conclusion. To impose a burden on an employer to "prove a negative" by establishing that the subsequently alleged psychiatric injury bore no causal relationship to the work-related accident would be fundamentally unfair. Regardless of whether the employer had notice of the purported psychiatric injury at the time that the Notice of Compensation Payable was executed, and regardless of how much time elapsed before the psychiatric injury arguably manifested itself, the employer would have to prove the absence of any causal relationship between the psychiatric injury and the work-related accident. We will not strain the humanitarian goals underlying the Workmen's Compensation Act by holding that employees may remain perpetually eligible for compensation merely by alleging psychiatric injury at the eleventh hour and waiting to see whether the employer can adduce the requisite expert testimony to disprove a causal nexus.

*Id.* at ——, 728 A.2d at 905. In essence, our Supreme Court held that it is the claimant's burden to prove that the psychological injury is work related, not the employer's burden to prove it is not.

■ Although Claimant's estate argues that Employer's failure to pay his psychiatric medical bills was unreasonable, because Claimant had the burden of proof, any "contest" by Employer, i.e., failure to pay medical bills, cannot be considered *per se* unreasonable. Until the connection between the mental injury and the physical work-related injury is proven, an employer is neither obligated to pay the psychiatric bills nor can it be penalized for failure to do so. As such, the 20% penalty assessed against Employer for failure to pay Claimant's psychiatric bills was erroneous as Claimant did not prove his psychiatric injuries were work-related until the WCJ made such a finding.

■ While *Commercial Credit* dealt with which party had the burden to prove the psychiatric injury was related to the physical work-related injury, we believe that its holding is equally applicable to cases involving penalties for other types of injuries, such, as here, that are not included in the NCP and where the employer refuses to pay the medical bills. Because the NCP did not indicate that Claimant suffered a left knee injury and Claimant had not proven that he sustained a work-related left knee injury until the WCJ decided in his favor, until that award was made by the WCJ, Employer was under no obligation to pay those medical bills. Consequently, penalties assessed against Employer for failure to pay those bills as well was erroneous.

Accordingly, the decision of the Board is affirmed in all respects except that the portion of its decision ordering the assessment of 20% penalties against Employer for failure to pay Claimant's medical bills is reversed.

### *O R D E R*

AND NOW, this 1st day of October, 1999, the order of the Workers' Compensa-

tion Appeal Board, dated July 28, 1998, is affirmed in all respects except that the portion of its decision ordering the assessment of 20% penalties against Employer for failure to pay Claimant's medical bills is reversed.

Senior Judge JIULIANTE dissents.