Alice MADER, Petitioner,

v.

**WORKMEN'S COMPENSATION
APPEAL BOARD (USAIR,
INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 27, 1995.

Decided Jan. 3, 1996.

Amiel B. Caramanna, Jr., for petitioner.

Patricia L. Wozniak, for respondent.

Before COLINS, President Judge, PELLEGRINI, J., and LORD, Senior Judge.

COLINS, President Judge.

Alice Mader (Mader) petitions for review of the February 10, 1995 decision of the Workmen's Compensation Appeal Board (Board) in which it affirmed a workers' compensation judge's (WCJ) reinstatement of benefits for the period from August 7, 1991 through April 13, 1993 and suspension as of April 14, 1993.

Mader worked for USAir as a utility maintenance employee from March 1981. On July 4, 1982, Mader injured her lower back and received total disability benefits until January 1983, when she returned to work. A supplemental agreement dated February 4, 1983 suspended benefits. Mader last worked for USAir in September 1989, when she took a medical leave of absence in order to obtain treatment for non-work-related emotional stress and breakdown. Subsequently, Mader underwent treatment for cancer.

In July 1991, while on medical leave, Mader experienced sharp pains in her lower back.[1] Mader's injury was diagnosed as spondylolisthesis at L4 and L5 (slippage of one bone on another in the spine), requiring two surgeries to correct bone pressure on spinal nerves and to fuse vertebrae. In August 1991, Mader applied for reinstatement of benefits asserting recurrence of the July 1982 work-related disability and wage loss.

Before the WCJ, the parties presented conflicting medical testimony. Mader's medical expert, Dr. Eric Altschuler, testified that his office began treating Mader on August 7, 1991 after Mader experienced a recurrence of severe back pain. Dr. Altschuler testified unequivocally that Mader's July 1982 work injury was a substantial factor contributing to her current disability; he opined that Mader's activity at the time could not have caused the spondylolisthesis, but could have caused it to become symptomatic. According

to Dr. Altschuler, Mader could not return to her utility maintenance position as of November 1992 (the date of his deposition testimony), but could possibly return to light-duty work in the future.

USAir's medical expert, Dr. Paul Lieber, concurred with Dr. Altschuler's diagnosis of April 1992 and subsequent surgical treatment of Mader's spondylolisthesis, but disagreed with respect to the cause of Mader's disability. Dr. Lieber stated that the July 1982 work injury "likely would have had no effect" on Mader's current disability; in Dr. Lieber's opinion, Mader's condition was congenital and she had fully recovered from the July 1982 work injury. Dr. Lieber agreed with Dr. Altschuler that Mader could not return to her utility maintenance position.

In resolving the conflicting testimony, the WCJ accepted as persuasive Dr. Altschuler's opinion that Mader's 1982 work injury contributed substantially to her disability during the time that he and his partner treated her from August 7, 1991. The WCJ acknowledged that Dr. Lieber's opinions were logical, but not persuasive enough to outweigh Dr. Altschuler's. The WCJ concluded that Mader met her burden of proving that the work-related disability continued from August 7, 1991 through April 13, 1993, the day before Dr. Lieber examined her. The WCJ suspended benefits as of April 14, 1993.

■ Our review on appeal is limited to violations of constitutional rights, errors of law, and whether the referee's findings are adequately supported by substantial, competent evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986). Before this Court, Mader asserts that the evidence of record does not support the suspension of benefits as of April 14, 1993. More specifically, Mader contends that the medical testimony of Dr. Lieber cannot support the suspension because the WCJ found Dr. Altschuler's testimony more persuasive.

---

[1] There is some question as to what Mader was doing at the time she experienced the pain because her testimony was inconsistent with statements made to her physicians. The WCJ found her testimony credible and attributed the inconsistencies to the passage of time rather than deceit; the WCJ acknowledged that the result would be the same regardless of which activity gave rise to the pain episode.

In a reinstatement petition following termination of benefits, the claimant must establish by precise and credible evidence that the disability has increased or recurred and that his or her physical condition has actually changed in some way. *Strattan Homes, Inc. v. Workmen's Compensation Appeal Board (Hollis)*, 159 Pa. Cmwlth. 433, 633 A.2d 1250 (1993). Credibility determinations are within the sole discretion of the WCJ, who may accept or reject any medical testimony in whole or in part. *Hess Brothers v. Workmen's Compensation Appeal Board (Gornick)*, 128 Pa.Cmwlth. 240, 563 A.2d 236 (1989).

In reinstating Mader's benefits, the WCJ found that Mader met her burden of establishing a recurrence of her work-related disability based on the medical testimony of Dr. Altschuler, who treated Mader from August 7, 1991. The WCJ accepted as credible and persuasive Dr. Altschuler's testimony that Mader's inability to work, during the period when he was treating her, was caused by her work-related injury. The WCJ did not reject Dr. Lieber's testimony as not credible. Rather, he accepted it as credible for the period following Dr. Altschuler's treatment. Dr. Altschuler's testified with respect to the period beginning on August 7, 1991 and ending approximately three months after the date of his testimony in November 1992.[2] Dr. Lieber examined Mader and testified in April 1993; the WCJ found Dr. Altschuler's testimony more credible than Dr. Lieber's only with respect to the period prior to his examination.

The WCJ explained his reasoning in reinstating benefits for the closed period in the last paragraph of Finding of Fact No. 14. The WCJ found that Mader established the work-related cause of her disability from August 7, 1991 through April 13, 1993,

> but on and after the date of Dr. Lieber's evaluation, I do not find claimant's evidence persuasive that her loss of wages was the result of her work-related injury. Rather, I find that the most persuasive interpretation of the evidence is that claim-

ant had returned to the condition that she was in prior to the increase in symptoms in July 1991 that resulted in claimant seeking treatment from Dr. Altschuler.... However, claimant has not proven that the loss in wages on and after April 14, 1993 was other than claimant's non-work-related emotional breakdown and depression, that originally resulted in claimant leaving employment.... Therefore, I credit Dr. Lieber's opinion that disability from claimant's July 4, 1982 work-related injury did not cause a loss of wages as of April 14, 1993.

Finding of Fact No. 14.

Section 413 of the Workers' Compensation Act[3] empowers the WCJ to take appropriate action as indicated by the evidence upon the filing of any petition by either party. *Thomas v. Workmen's Compensation Appeal Board (George's Painting Contractors)*, 157 Pa.Cmwlth. 207, 629 A.2d 251 (1993). In this case, the evidence of record supports the WCJ's reinstatement of benefits for a closed period followed by suspension of benefits. Accordingly, the decision of the Board is affirmed.

### ORDER

AND NOW, this 3rd day of January, 1996, the decision of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.

---

2. Dr. Altschuler testified that he last treated Mader in October 1992 and expected to see her for follow-up approximately three months later.

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.