**Gerald LAKE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WHITEFORD NATIONAL LEASE and S.W.I.F.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 12, 1999.

Decided Feb. 17, 2000.

Vincent J. Quatrini, Jr., Greensburg, for petitioner.

David F. Ryan, Pittsburgh, for respondents.

Before DOYLE, President Judge, KELLEY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

Gerald Lake (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) reversing in part and vacating in part the Workers' Compensation Judge's (WCJ) order. The WCJ denied the termination petition filed by Whiteford National Lease (Employer) and sua sponte suspended Claimant's workers' compensation benefits upon determining that Claimant had returned to work at wages equivalent to those earned from his time of injury job. Claimant presents two

issues for our review: First, whether the Board erred by finding that the WCJ capriciously disregarded competent evidence in denying Employer's termination petition; and second, whether the WCJ erred by suspending Claimant's benefits when Employer had not filed a suspension petition. For the reasons set forth herein, we reverse the Board's order and reinstate the decision and order of the WCJ.

The relevant facts are as follows. On August 11, 1987, Claimant sustained a right knee injury when he fell from a tractor-trailer unit while working for Employer as a truck driver. Claimant's treating physician, A. Roger Wigle, M.D., immediately removed Claimant from work. On October 6, 1987, Employer accepted the injury as work-related through issuance of a notice of compensation payable, which directed payment of compensation benefits at the rate of $334.24 per week. Thereafter, on July 6, 1988, Dr. Wigle performed arthroscopic knee surgery and Claimant continued to remain off work.

On or about May 5, 1995, Employer filed a termination petition alleging that as of April 14, 1995, Claimant had fully recovered from his work injury. In support of its petition, Employer presented the medical testimony of Barry L. Riemer, M.D., and the testimony of Dane Cramer and John Lampert, private investigators Employer hired to conduct surveillance of Claimant. Dr. Riemer testified that he conducted an independent medical examination (IME) of Claimant on April 14, 1995. From his physical examination and review of Claimant's medical records, Dr. Riemer observed that Claimant exhibited an anterior cruciate ligament deficit in his right knee. However, Dr. Riemer concluded that although Claimant still had limitation in his right knee, he had fully recovered from his August 11, 1987 work injury. Dr. Riemer opined that any remaining limitation is the result of a pre-existing, non-work-related right knee injury that Claimant sustained in 1986, one year prior to his work-related injury.

The reports and testimony of the two private investigators, Cramer and Lampert, revealed that Claimant was listed as a hunting guide for Wolf Pack Outfitters of Montana. Employer submitted two surveillance videotapes into evidence. The private investigators authenticated the videotapes and testified that they observed and videotaped Claimant working as a hunting guide in Montana and also working at an exhibit booth at a sports show held at an exposition hall.

Claimant did not testify nor did he present any medical testimony. By decision and order dated February 19, 1997, the WCJ denied Employer's termination petition. The WCJ found Dr. Riemer's testimony pertaining to Claimant's continuing right knee limitation credible but discredited that portion of his testimony stating that Claimant's residual knee problems are attributable solely to the 1986 non-work-related injury. (WCJ Decision and Order, February 19, 1997, Finding of Fact Nos. 12–14, R.R. at 144a). After denying Employer's termination petition, the WCJ then sua sponte issued a suspension of Claimant's compensation benefits effective February 1, 1995, based on the finding that Claimant had returned to work as a hunting guide at wages at least equal to his time of injury average weekly wage. (WCJ Decision, Finding of Fact Nos. 15–16, R.R. at 144a–145a). The WCJ reasoned that even though Employer did not file a suspension petition, issuance of the suspension did not prejudice Claimant since the evidence presented by Employer clearly demonstrated Claimant's return to gainful employment no later than February 1, 1995. (WCJ Decision, Conclusion of Law No. 4, R.R. at 145a).

Claimant and Employer then brought cross appeals of the WCJ's order before the Board. Employer argued that the WCJ erred by capriciously disregarding substantial, competent evidence in denying its termination petition. Claimant argued that the WCJ erred in suspending his compensation benefits in the absence of a sus-

pension petition filed by Employer. The Board found Employer's argument persuasive and, by decision and order dated March 30, 1999, reversed that part of WCJ's order denying the termination petition. Having granted Employer's termination petition effective April 14, 1995, the Board declined to address Claimant's appeal argument and vacated that part of the WCJ's order suspending Claimant's compensation benefits. Claimant then brought the instant appeal before this Court.

On appeal, Claimant correctly asserts that in cases such as this, where the party with the burden of proof was the sole party to present evidence yet does not prevail before the fact-finder, appellate review of an order is limited to determining whether the fact-finder capriciously disregarded substantial, competent evidence. *Cerasaro v. Workers' Compensation Appeal Board (Pocono Mountain Medical, Ltd.)*, 717 A.2d 1111 (Pa.Cmwlth.1998) citing *Tomczak v. Workmen's Compensation Appeal Board (Pro–Aire Transport)*, 667 A.2d 271 (Pa.Cmwlth.1995). A capricious disregard of evidence occurs when there is a "willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one has no basis to challenge." *Cerasaro*, 717 A.2d at 1113, quoting *Gallo v. Workmen's Compensation Appeal Board (United Parcel Service)*, 95 Pa.Cmwlth. 158, 504 A.2d 985 (1986).

Claimant first argues that the Board erred by finding that the WCJ capriciously disregarded competent evidence in denying Employer's termination petition. Claimant contends that the WCJ provided ample justification from the record to support his credibility determinations pertaining to Dr. Riemer. We agree.

The Board concluded that contrary to the WCJ's finding, Dr. Riemer had sufficient medical information upon which to base his opinion stating that Claimant had completely recovered from his 1987 work injury and that all residual disability is attributable to Claimant's previous 1986

knee injury. (Board Decision and Order, March 30, 1999, at 7, R.R. at 154a). Specifically, the Board stated:

> Dr. Riemer based his opinions on a medical report from Claimant's treating physician, a medical report from a prior IME physician, and the history given to him by Claimant, all of which verified that Claimant had an anterior cruciate ligament deficient knee caused by the 1986 injury and had surgery on his right knee prior to beginning work with [Employer]. Based on his experience as an orthopedic surgeon, Dr. Riemer testified that Claimant's 1987 work accident aggravated Claimant's pre-existing condition, but that Claimant had recovered from that aggravation. Therefore, we believe the WCJ capriciously disregarded uncontradicted, competent evidence. . . .

(Board Decision at 7, R.R. at 154a).

The Board's view of the record certainly represents a legitimate interpretation of the evidence. However, in its review of an administrative agency adjudication, the Board's role was not to determine if the record contained sufficient support for Dr. Riemer's conclusion that Claimant had fully recovery from his work injury. Rather, the Board's function in reviewing a final order from a workers' compensation proceeding is to view the record in the light most favorable to the prevailing party, drawing all reasonable inferences deducible from the evidence, to ascertain if there is sufficient support for the fact-finder's determination. *Cerasaro*, 717 A.2d at 1114, citing *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995). As we stated in *Cerasaro*, 717 A.2d at 1114, "to the extent that the reasons proffered by the WCJ are susceptible of an interpretation in support of his decision as well as an interpretation against his decision, we are required to accept that interpretation which supports the WCJ's decision." In review-

ing the record in light of this tenet, we conclude that sufficient evidence exists to support the WCJ's determination that a portion of Dr. Riemer's testimony was not credible.

■ Our review of the record reveals that in addition to his examination of Claimant, Dr. Riemer reviewed previous IME reports from three orthopedic specialists, Dr. Gordon, Dr. Casale, and Dr. Fried. (Reproduced Record (R.R.) at 100a–102a, 105a–111a, 113a and 115a–116a). Notably, the record does not contain any medical report from Dr. Wigle, which the Board specifically cited as a basis of support for Dr. Riemer's conclusion that Claimant's knee condition is not related to his work injury. (Board Decision at 7, R.R. at 154a). The IME report of Dr. Casale reaches an inconclusive result and the IME report of Dr. Fried relates Claimant's right knee condition to the 1987 work injury. (R.R. at 105a–111a, 113a and 115a–116a). Only the IME report of Dr. Gordon specifically relates Claimant's knee condition to his 1986 injury and it confusingly recites the same circumstances under which Claimant sustained his 1987 injury, i.e., a fall from a tractor trailer. (R.R. at 100a–102a). As the final basis of support for its reversal, the Board relied upon the history provided to Dr. Riemer by Claimant, a history that Dr. Riemer went to great lengths to show was unreliable. (Board Decision at 7, R.R. at 154a). Accordingly, the record clearly provides a sufficient basis upon which the WCJ could discredit a portion of Dr. Riemer's testimony without engaging in a willful and deliberate disbelief of an apparently trustworthy witness.

■ We now reach Claimant's second argument asserting that the WCJ erred by sua sponte suspending his compensation benefits after the record was closed when Employer had not filed a suspension petition or amended its termination petition to request a suspension. Claimant maintains that he was prejudiced by the WCJ's unilateral action because he only had notice to defend against the termination petition, and thus, did not have a full and fair opportunity to contest the suspension of his benefits. We disagree with Claimant's contention for two reasons: First, § 413 of the Workers' Compensation Act (Act)[1] grants broad authority to a WCJ to take appropriate action based on the evidence, irrespective of the form of the petition, and second, the record does not support Claimant's assertion that he did not have notice that Employer sought to prove his employment with Wolfpack Outfitters.

■ It is well settled that strictness of pleadings in workers' compensation proceedings is not required. *Anzaldo v. Workmen's Compensation Appeal Board (M & M Restaurant Supply)*, 667 A.2d 488, 491 (Pa.Cmwlth.1995) citing *Dunmore School District v. Workmen's Compensation Appeal Board (Lorusso)*, 89 Pa. Cmwlth. 368, 492 A.2d 773 (1985). If one party effectively puts the adverse party on notice as to the theory of relief that it is seeking, the WCJ will be authorized to grant the relief requested. *Anzaldo*, 667 A.2d at 491, citing *St. Francis Hospital v. Workmen's Compensation Appeal Board (Kerr)*, 156 Pa.Cmwlth. 605, 628 A.2d 920 (1993).

Claimant cites *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Cmwlth. 455, 576 A.2d

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772. Section 413 of the Act provides in pertinent part:

A [WCJ] may ... at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its [WCJ], upon petition filed by either party ... upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased.... Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has ... changed. 77 P.S. § 772.

1163 (1990), in which we held that when presented with a modification petition a WCJ may not go beyond the pleadings to grant a termination where one was not requested.[2] However, given subsequent opportunities to address this issue under varied factual circumstances, we have limited *Boehm*, 576 A.2d 1163, by stating that under § 413 of the Act, a WCJ may grant relief beyond that requested in an employer's petition where a claimant would not have been misled by the form of the petition, would have had notice of the relief sought by the employer and would have had a full and fair opportunity to contest the basis of the employer's assertions. *Yezovich v. Workmen's Compensation Appeal Board (USX Corp.)*, 144 Pa.Cmwlth. 601, 601 A.2d 1341 (1992) (the WCJ correctly granted a modification because, even though the employer sought to terminate benefits, it alleged that work was available within the claimant's limitations thus placing the claimant on notice of the type of relief actually sought); *Hutter v. Workmen's Compensation Appeal Board (Pittsburgh Aluminum Company)*, 665 A.2d 554 (Pa.Cmwlth.1995) (recognizing that a termination may be granted where the only petition pending is filed by the claimant, e.g., under a claim petition where the claimant only proves disability for a closed period or under a set aside petition where the claimant fails to carry his or her burden, the claimant is on notice that the natural result in these situations is a termination of benefits).

■ On the facts of this case, we conclude that the WCJ did not err in granting a suspension of Claimant's compensation benefits effective February 1, 1995. While Employer's termination petition did not reference Claimant's return to work, Claimant was on notice for more than a year prior to the close of the record that, in addition to medical testimony, Employer intended to prove Claimant's full recovery through submission of a surveillance video showing Claimant engaged in alternate employment that required extended physical exertion involving his injured right knee. (Hearing Transcript, September 23, 1996, at 7–8, R.R. at 125a–126a). It is disingenuous for Claimant to assert that he was surprised by the WCJ's action when Claimant's counsel stated on the record that Claimant had returned to work and that Employer would be entitled to an earnings modification if the termination petition was denied. (Hearing Transcript, R.R. at 129a). Furthermore, after receiving the videotape, Claimant declined to present his own testimony ostensibly because he wanted to avoid making incriminating statements that could be used in a potential fraud prosecution for receiving compensation benefits while gainfully employed. (Hearing Transcript, R.R. at 131a–132a).

■ Lastly, we disagree with Claimant's contention that the WCJ did not have any basis upon which to determine his wages for suspension purposes. While it is correct that no actual wage statement was entered into evidence, the WCJ as-

---

**2.** In *Frontini v. Workmen's Compensation Appeal Board (Parks Moving & Storage)*, 702 A.2d 8 (Pa.Cmwlth.1997), we summarized our holding in *Boehm* as follows:

> In *Boehm*, an employer filed a modification petition, alleging that the claimant had returned to light duty work. After considering the evidence the [WCJ] concluded that the claimant was partially disabled for a limited period and that his disability terminated after that period. Although the [Board] affirmed, we reversed, concluding that the [WCJ] erred when he decided, sua sponte, to consider the employer's petition for modification as a petition for both modi-

fication and termination. In doing so, we rejected the employer's argument that neither a claimant nor an employer is bound by the form of the petition where the facts warrant relief. Noting that the Workers' Compensation Act is remedial and intended to benefit the worker, we concluded that a [WCJ] could look beyond the pleadings only where the facts warranted relief for a claimant; with respect to an employer, we held that a [WCJ] was empowered to grant only such relief as the employer actually requests.
>
> *Id.* at 10. (citations omitted).

certained from the credible testimony of private investigator Dane Cramer that hunting guides employed by Wolf Pack Outfitters can make as much as $80.00 per day. (Testimony of Dane Cramer, April 23, 1996, at 12–14, R.R. at 60a–62a). From this information, the WCJ derived that Claimant's average weekly wage was at least equal to his average weekly wage at the time of his injury. (WCJ Decision, Finding of Fact No. 16, R.R. at 145a). Based on the foregoing, we conclude that the form of the petition did not mislead Claimant, he had ample notice regarding the basis for the suspension, and he had a full and fair opportunity to contest Employer's assertion that he obtained alternate employment.

Accordingly, having held that the Board erroneously reversed the WCJ's denial of Employer's termination petition and that the WCJ properly suspended Claimant's benefits effective February 1, 1995, the order of the Board dated March 30, 1999 is hereby reversed and the order of the WCJ is hereby reinstated.

### ORDER

AND NOW, this 17th day of February, 2000, the order of the Workers' Compensation Appeal Board (Board) dated March 30, 1999 is hereby reversed, and the WCJ's decision and order dated February 19, 1997 is reinstated.