**WORLD KITCHEN, INC., Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (RIDE-OUT), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 20, 2009.

Decided June 25, 2009.

Amended Sept. 14, 2009.

Publication Ordered Sept. 14, 2009.

Perry D. Merlo and Marta J. Guhl, Philadelphia, for petitioner.

C. Lee Anderson, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT[1].

World Kitchen, Inc. (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying Employer's modification petition. In doing so, the Board stated that it was affirming the decision of the Workers' Compensation Judge (WCJ). In this appeal, the principal issue we consider is whether a claimant must present medical evidence to defeat the grant of a modification petition where the employer's medical expert testifies that the claimant may work forty hours a week and up to ten hours in any single day and that testimony is credited by the WCJ.

Shannon Rideout (Claimant) has worked for Employer for over sixteen years, performing a variety of factory jobs, including assembler and line operator. On September 26, 2005, she sustained a work-related back injury when she slipped on stairs at Employer's premises. After filing a claim petition, Claimant was awarded total disability benefits.

Employer's doctor released Claimant to perform sedentary work, forty hours per week, as of September 6, 2006, and Employer made such work available to her. Claimant did not report for work on September 6, but she did report to work on September 7, 2006. Employer issued a Notification of Modification, modifying Claimant's benefits based on the wages of the full-time sedentary job. Claimant challenged the Notification of Modification.

Employer also filed a modification petition based on the specific job it had made available to Claimant. Employer sought a modification, and not a suspension, because the new job paid a slightly lower hourly rate than Claimant's pre-injury job.[2] In her answer, Claimant admitted that a specific job had been offered to her. She also alleged that she had attempted to return to work each day after September 6 "with varying degrees of success due to her work injury."[3] Reproduced Record at 5a (R.R. ____).

At the first hearing before the WCJ on October 10, 2006, the parties addressed Claimant's challenge to the Notification of Modification, which was based on her belief that she was not capable of working forty hours a week. Since September 6, Employer had been paying Claimant partial disability, based on the difference between the wages from the light-duty job and her pre-injury job. However, Claimant asserted that Employer should base her partial disability on the actual wages she earned, week-by-week. The WCJ agreed with Claimant's position. As a result, Employer agreed to pay Claimant disability based on her actual earnings retroactive to September 6, pending a decision on its modification petition.

The parties continued to litigate Employer's modification petition before the WCJ. The WCJ explained that Employer had the burden to show that there was work available. Employer's counsel replied that

> our position is that the work is available, we haven't received any excuses from

---

1. The case was reassigned to this author on March 24, 2009.

2. Claimant's pre-injury job paid $14.34 per hour and her average weekly wage was $611.41. The new job pays $13.91 per hour with an average weekly wage of $556.40, re-

sulting in a partial disability payment of $36.67 per week.

3. Claimant admitted in her answer that she was absent from work on September 11, 2006, for a reason unrelated to the work injury.

any doctor saying that [Claimant] can't work the forty hours a week, nor have we received any excuses for the days that she's taken off work.

R.R. 21a. In response, Claimant agreed that she "should be able to do the [full-time] work" Employer made available to her, but Claimant argued that she sometimes has to go home because of back pain, and "if that's related to her work injury, then she's entitled to partial benefits." R.R. 23a.[4]

In support of its modification petition, Employer presented the deposition testimony of William J. Beutler, M.D., a board-certified neurosurgeon who focuses exclusively on spinal care. Dr. Beutler reviewed Claimant's medical records and various radiographic test results. The records document that Claimant was complaining of back pain prior to sustaining her work injury. A lumbar MRI from October 13, 2005, and a thoracic MRI from November 10, 2005, both revealed long-standing degenerative changes at the T12–L1 verterbrae that pre-existed Claimant's work injury. A bone scan confirmed that Claimant had only degenerative changes with no acute fracture at the T12–L1 verterbrae. Dr. Beutler, and every radiologist who interpreted the tests, saw no fracture.

At Employer's request, Dr. Beutler examined Claimant on May 9, 2006; the results were normal, with the exception of limitations in her back range of motion. Based on Claimant's subjective symptoms, Dr. Beutler diagnosed her work injury as an exacerbation of her pre-existing degenerative condition at the T12–L1 verterbrae and released her to perform full-time sedentary work, which involves lifting up to ten pounds and standing or walking one to four hours a day. Dr. Beutler viewed a videotape of various factory jobs Employer had available for Claimant, and he approved each job as appropriate and well within Claimant's restrictions. He noted that the jobs allowed Claimant to sit or stand, as needed. As of November 3, 2006, Dr. Beutler released Claimant to perform the light jobs up to ten hours per day. Dr. Beutler saw no reason for Claimant to have to rotate between different jobs; to miss work; to come in late or to leave early while employed at any of these jobs.

Dr. Beutler examined Claimant again on February 9, 2007. Dr. Beutler found no problems except for subjective pain complaints when he touched her back. However, these complaints did not correlate to an actual clinical problem. Dr. Beutler felt that Claimant's condition had improved and that she could now lift up to twenty pounds and could stand or walk for four to six hours.

Employer presented testimony from Carol Shaw, who is Claimant's supervisor. Shaw explained that Dr. Beutler approved an "assembler" job for Claimant, which consisted of various jobs, such as placing a sticker on a finished product, placing a pad in a box, inserting labels, placing plastic covers on bowls and using a one-pound tool to scan tickets. These tasks fell within Dr. Beutler's restrictions. Shaw told Claimant to tell her if she had problems performing the jobs. On one occasion, Claimant did so, complaining that the assembly line was moving too fast. On several other occasions, Claimant informed Shaw that she had to leave work early because her back hurt.

Employer also presented testimony from Cynthia Goetz, Employer's Human

---

4. Claimant filed a penalty petition for unpaid indemnity and medical benefits. The WCJ determined that Employer failed to pay some medical bills, but he declined to assess a penalty. That petition is not at issue on appeal.

Resource Generalist. Goetz confirmed that since September 6, 2006, Employer has made at least forty hours of light work available to Claimant each week. When Goetz told Claimant in November 2006 that Dr. Beutler had released her to work ten hours a day, Claimant said "okay." Claimant was offered ten hours of work on November 6th, 7th, 8th and 13th, but she never worked a ten-hour day. She worked eight hours on three of the days, and she did not work at all on one of the days. Claimant often failed to work eight hours on the days she was scheduled to work eight hours. Claimant has never informed Goetz that the jobs fall outside of her restrictions. Goetz testified that on various days since September 6 when Claimant either missed work, came in late or left early, she told Employer to charge her for Family Medical Leave Act (FMLA) leave, in accordance with the notes provided by her doctor.

Claimant's FMLA paperwork was submitted into evidence. Dr. Mark Holencik reported on August 10, 2006, that Claimant has "multiple subacute spinal fractures, co-existing arthritis and persistent spasm T11–T12–L1" and that she "may miss occasional work days due to severe back ache and spasm." R.R. 112a–113a. An October 11, 2006, note from Dr. Holencik states that Claimant may continue modified duty, eight hours per day, forty hours per week but does not state, or suggest, that her back problems were work-related. Notably, Dr. Beutler disagreed that Claimant had spinal fractures, from any cause.

Claimant testified on her own behalf. She acknowledged that she was released to return to work as of September 6, 2006, and stated that she tried to do so. However, when she experienced a back spasm as she was driving to work, she called Employer and requested a day of FMLA leave. Claimant testified that after she returned to work on September 7, she was not able to work every day, or had to leave early, because of back pain. Claimant stated that she could not work a ten-hour day and found even an eight-hour day difficult.

Claimant reviewed a calendar listing days and times she worked from September to December 2006. There were numerous days where Claimant used FMLA leave. Claimant admitted that she was absent from work on September 11, 2006, because her son was ill. On September 19, Claimant had a 10:30 a.m. doctor's appointment. Instead of reporting to work after the appointment, she took the whole day off without permission. On October 25, 2006, Claimant took a half day off to take her son to an orthodontist appointment. On December 1, 2006, Claimant worked from 7:30 a.m. to 1:00 p.m. and left early when Employer offered a "que" which Claimant described as a "reward" Employer gives its employees by allowing them to leave early when they are ahead of schedule. R.R. 62a. Claimant admitted that she did not have to accept the que; she could have stayed and continued working.

The WCJ's decision concluded, in relevant part, as follows:

1. [Employer] established that there was light work offered to the Claimant within her capability and within the restrictions of Dr. Beutler.

2. There is no indemnity at issue in this case.

WCJ Decision, November 5, 2007, at 4; Conclusions of Law 1–2. The WCJ offered the following discussion with respect to Employer's modification petition:

I thought there was little conflict in this case. Claimant did go back to work and was working. The jobs were appropriate. [Employer] followed the recommendations of the doctor. Claimant exercised her own judgment. There had

been partial indemnity paid. It's not always clear if Claimant missed work because of the que system and the nature of the light duty jobs namely that the amount of work in those jobs can vary. I didn't think there were any issues with regard to indemnity.

WCJ Decision, November 5, 2007, at 4. The WCJ's order provided, *inter alia,* that "[c]ompensation remains modified or suspended depending upon Claimant's actual earnings. This ORDER disposes of the outstanding petitions." WCJ Decision, November 5, 2007, at 5.

■ Employer appealed, and the Board affirmed. Although the WCJ did not state whether he was granting or denying the modification petition, the Board concluded that the WCJ had denied the petition based on his finding that Claimant was not able to work ten hours a day. The Board compared this case to one involving a reinstatement of a claimant's benefits after suspension and concluded:

> Although [Employer's] medical expert opined that Claimant could perform the job for ten hours, Claimant testified that she could not because of her back pain. The [WCJ] chose to accept her testimony. Thus, [Employer] did not establish that it was entitled to further modifications.

Board Opinion at 5. Employer then petitioned for this Court's review.[5]

On appeal, Employer presents two issues for our consideration.[6] First, Employer contends that the WCJ never actually ruled upon its modification petition

and, on review, the Board compounded the WCJ's error by applying principles of law relevant to reinstatement, not modification, petitions. Second, Employer argues that the WCJ failed to issue a reasoned decision.

■ In its first issue, Employer argues that the WCJ and the Board each erred. The WCJ erred by concluding that indemnity benefits were not at issue. The Board erred by imposing a burden of proof upon Employer that was appropriate for a reinstatement petition but not for a modification petition, which Employer had filed. Employer contends that Claimant's testimony alone was not sufficient to defeat Employer's medical evidence offered to support of its modification petition, which evidence was credited by the WCJ. We agree.

■ Section 306(b) of the Workers' Compensation Act [7] (Act) provides that if a claimant has regained some, but not all of her pre-injury earning power, then employer is entitled to a modification of benefits to partial disability. Section 306(b)(2) of the Act provides that if the employer has a job the claimant is capable of performing, it "shall offer such job" to the claimant. 77 P.S. § 512(2). Job offers made under Section 306(b)(2) are subject to a four-part test established by our Supreme Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987). That test provides as follows:

---

5. This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown),* 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

6. For organizational purposes, we have reversed the order of Employer's arguments.

7. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512.

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.
2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.
3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski,* 516 Pa. at 252, 532 A.2d at 380.

Employer was seeking a modification of Claimant's benefits, not based on her actual earnings, but rather based on the availability of forty hours of light work each week since September 6, 2006.[8] Because the WCJ specifically found that Employer made available to Claimant "appropriate" work within her capabilities and the restrictions imposed by Dr. Beutler, Employer met its burden under *Kachinski* for obtaining a modification of benefits.

In affirming the WCJ, the Board reasoned that the WCJ apparently believed that Claimant missed work because of work-related back pain. The Board likened the situation to that of a reinstatement where a claimant's testimony alone, if believed, can be sufficient to support a reinstatement of benefits. *See Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.),* 537 Pa. 223, 642 A.2d 1083 (1994). The *Latta* analysis

is inapplicable to this case for several reasons.

First, this was a modification petition proceeding, where medical evidence was needed to establish the claimant's capabilities and whether a particular job fell within those capabilities. Employer proved through unrebutted medical evidence that the full-time job it provided Claimant fell within the restrictions required by Claimant's work injury. Indeed, that was the WCJ's express finding. Claimant presented no contrary medical evidence, *i.e.*, that she cannot work forty hours a week at the light assembler job because of her work injury. Her statement that sometimes she cannot do the job because her back hurts was inadequate to rebut Employer's evidence. This Court has explained that a claimant's subjective belief about her work abilities, which is not supported by medical restrictions imposed by a physician, is insufficient in a modification proceeding. *Walk v. Workmen's Compensation Appeal Board (U.S.Air, Inc.),* 659 A.2d 645 (Pa. Cmwlth.1995); *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Hoover),* 680 A.2d 40 (Pa. Cmwlth.1996). Here, the WCJ accepted Dr. Beutler's opinion and found that the job offered to Claimant was appropriate. Once that finding was made, the WCJ could not deny Employer's modification petition, notwithstanding Claimant's subjective beliefs about her ability to work.

Second, it is far from clear that Claimant's absences from work were caused by her work injury. Claimant has a long-standing degenerative condition in her back, and she has used a FMLA excuse for the days she failed to work her full hours.

---

8. The WCJ stated that there were no issues about Claimant's indemnity benefits. This is not the case. The WCJ's confusion may have resulted from a statement made by the parties at the hearing on January 30, 2007, that they had resolved the indemnity issue with respect to Claimant's penalty petition. However, they did not resolve the indemnity issue with regard to the modification petition.

Those excuses listed conditions that Dr. Beutler specifically testified were not part of the work injury. In addition, there were times, by Claimant's own admission, that she missed work for reasons unrelated to the work injury, such as her son's illness or an orthodontist appointment.

Third, the Board erred in holding that the WCJ denied the modification petition. To the contrary, he granted the petition by finding, as fact, that Claimant was able to work at the light-duty job offered by Employer. It also erred in applying reinstatement principles to Employer's modification petition. If Claimant wishes to obtain a reinstatement of benefits because she cannot do the light-duty job due to her work injury, then she may file a reinstatement petition and submit appropriate evidence in support thereof.

Claimant asserts that back pain is a problem, but Dr. Beutler released her to perform the assembler job full-time notwithstanding her acknowledged back pain. He specifically stated that there is no reason related to the work injury that Claimant should have to miss work, come in late or leave early. Claimant never provided Employer with a physician's statement that she must be excused because of her work injury.

In sum, both the WCJ and the Board erred in ordering Employer to pay Claimant partial disability benefits based on her actual earnings. Accordingly, we reverse the Board's order and remand for the entry of an order granting Employer's modification petition based on the availability of suitable employment for forty hours per week as of September 6, 2006, and ongoing.[9]

9. Based on our disposition of the case, we need not address Employer's second issue.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772. Section 413(a) of the Act

## ORDER

AND NOW, this 25th day of June, 2009, the order of the Workers' Compensation Appeal Board dated August 19, 2008, in the above captioned matter is hereby REVERSED and the matter is REMANDED to the Board with instructions to remand to the Workers' Compensation Judge, who shall enter an order granting the Modification Petition of World Kitchen, Inc. based on the availability of suitable employment for forty hours per week as of September 6, 2006, and ongoing.

Jurisdiction relinquished.

DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully dissent. The majority reverses the Workers' Compensation Appeal Board (Board) for affirming the decision of the workers' compensation judge (WCJ) based on principles governing a reinstatement petition when World Kitchen, Inc. (Employer) filed a modification petition. In my view, the Board properly understood that section 413(a) of the Workers' Compensation Act (Act)[1] authorizes a WCJ to take whatever action is appropriate based on the evidence, irrespective of the form of the petition. *Lake v. Workers' Compensation Appeal Board (Whiteford National Lease)*, 746 A.2d 1183 (Pa. Cmwlth.2000). Thus, I would not reverse the Board on this basis. Instead, for the reasons set forth below, I would vacate and remand for a reasoned decision.

Shannon Rideout (Claimant) suffered a work injury to her back in September 2005, and Employer paid her workers'

states that a workers' compensation judge may at any time modify, reinstate, suspend or terminate benefits upon petition filed by either party. *Id.*

compensation benefits. On May 9, 2006, William Beutler, M.D., released Claimant to return to sedentary work. Employer provided Dr. Beutler with a video of various light-duty jobs, and Dr. Beutler approved those jobs for Claimant.

Claimant was to return to work on September 6, 2006, but she had a back spasm two hours prior to the start of work and called off pursuant to the Family and Medical Leave Act of 1993 (FMLA).[2] Employer filed a modification petition, alleging that Claimant failed to return to work in a light-duty position within her restrictions. Claimant did return to work on September 7, 2006, but, in the following days, Claimant occasionally left work early, arrived late or missed a work day because of back pain. In those instances, Claimant relied on her FMLA certification.

By letter dated November 3, 2006, Dr. Beutler approved a ten-hour work day and overtime on Saturdays for Claimant. Employer offered Claimant ten-hour work days on November 6, 7, 8 and 13. On three of those days, Claimant worked only eight hours, leaving early pursuant to her FMLA certification. On the remaining day, Claimant did not work at all, again relying on her FMLA certification.

The WCJ held multiple hearings on Employer's modification petition. At the October 10, 2006, hearing, the WCJ asked Employer to explain its position.

> Judge, our position is that [C]laimant was released to return to light duty work forty hours a week by Dr. Beutler and [C]laimant was provided with a job offer letter ... asking [C]laimant to re-turn to work on September [6]. She didn't return to work on that date....

> The [C]laimant did return to work the next day, which was the 7th of September 2006.... And our position is that the work is available, we haven't received any excuses from any doctor saying that she can't work the forty hours a week, nor have we received any excuses for the days that she's taken off work....

(R.R. at 21a.) The WCJ then asked Claimant's counsel to explain Claimant's position.

> It appears that she should be able to do the work and she makes a good faith effort to do it and she gets there and there are times when she simply can't function due to back pain and she goes home. They're difficult situations to deal with, but we believe it's not unreasonable for her to take off when she's in severe pain and she does come and gives it her best effort when she feels better. And if that's related to her work injury, then she's entitled to partial benefits.

(R.R. at 23a.) After considering the evidence presented, the WCJ stated:

> I thought there was little conflict in this case. Claimant did go back to work and was working. The jobs were appropriate. [Employer] followed the recommendations of the doctor. Claimant exercised her own [judgment]. There had been partial indemnity paid. It's not always clear if Claimant missed work because of the que system and the nature of the light duty jobs[,] namely that the amount of work in those jobs can vary.

---

**2.** 29 U.S.C. §§ 2601–2654. Section 102(a)(1)(D) of FMLA states that an eligible employee is entitled to twelve workweeks of leave during any twelve-month period because of a serious health condition that makes the employee unable to perform the functions of the employee's position. 29 U.S.C. § 2612(a)(1)(D). Such leave may be taken intermittently when medically necessary and when the employee's physician provides sufficient certification. 29 U.S.C. § 2612(b)(1); 29 U.S.C. § 2613(a).

I didn't think there were any issues with regard to indemnity.

(WCJ's op. at 4.) Thus, the WCJ ordered as follows: "Compensation remains modified or suspended depending upon Claimants [sic] actual earnings." (WCJ's op. at 5.)

Employer appealed to the Board, which affirmed. In doing so, the Board commented that the WCJ implicitly believed Claimant's testimony that her failure to work the entire time approved by Dr. Beutler was due to her work-related back injury. (WCAB's op. at 5.) The Board also stated that Claimant's testimony in that regard was sufficient to overcome Dr. Beutler's expert medical testimony because, in a reinstatement proceeding, the causal connection between the original work injury and a claimant's disability is presumed. (WCAB's op. at 5) (citing *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 642 A.2d 1083 (1994) (stating that a claimant's testimony, if believed, is sufficient to support a reinstatement of benefits following a suspension)). The Board acknowledged that this is not a reinstatement case, but the Board believed that the presumption applied here. (WCAB's op. at 5.)

## I. Applicability of Reinstatement Rules

On appeal to this court, Employer argues that the Board erred in applying the rules governing reinstatement proceedings when Employer filed a modification petition under section 413(a) of the Act. I disagree.

This court has held that, when either party files a petition pursuant to section 413(a) of the Act, the WCJ may take whatever appropriate action is indicated by the evidence. *Lake* (approving the suspension of benefits when the employer filed only a termination petition); *Fontaine v. Workers' Compensation Appeal Board (Philip Fountain & Son)*, 739 A.2d 628 (Pa. Cmwlth.1999) (approving the suspension of benefits when the employer filed only a modification petition); *Mader v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 669 A.2d 511 (Pa.Cmwlth.) (approving the suspension of benefits when the only petition before the WCJ was the claimant's reinstatement petition), *appeal denied*, 544 Pa. 686, 679 A.2d 231 (1996). Thus, where an employer files a modification petition and the evidence indicates that benefits should be modified at times, suspended at times and reinstated at times, the WCJ may modify, suspend and reinstate benefits without the parties filing additional petitions.

Here, based on Claimant's return to light-duty work, the WCJ ordered her benefits modified or suspended depending on her **actual** earnings, implicitly reinstating benefits during those periods when Claimant was absent from work without earnings. As the Board indicated, in order to reach such a result, the WCJ had to infer and believe from Claimant's testimony that her absences were related to the work injury. Section 413(a) of the Act authorized the WCJ to consider the sufficiency of Claimant's testimony in that regard. It was not necessary for the WCJ to wait until Claimant filed a reinstatement petition and repeated her testimony, as the majority holds.[3] (*See* majority at 347–48.)

---

**3.** Although Employer filed only a modification petition, the WCJ permitted Employer to suspend benefits if Claimant's actual earnings equal or exceed her pre-injury earnings. The majority remands for an order granting a modification of Claimant's benefits. Thus, under the majority's holding, Employer **may not suspend** Claimant's benefits if her earnings from the light-duty job equal or exceed her pre-injury earnings. The majority would

## II. Reasoned Decision

Employer also argues that the WCJ's decision is not a reasoned decision because the WCJ did not address, or even recognize, the indemnity issue presented by Employer's modification petition, i.e., whether Claimant's failure to work the light-duty jobs at various times was due to her work injury.[4] I agree.

The WCJ did not specifically address the indemnity issue because the WCJ "thought there was little conflict in this case" and "didn't think there were any issues with regard to indemnity." (WCJ's op. at 4.) The WCJ was incorrect.[5] Although Employer and Claimant differed as to whether Claimant's failure to work all of the time approved by Dr. Beutler was due to her work injury, the WCJ did not discuss the evidence presented on this issue or explicitly determine whether Claimant met her burden of proof.[6] The WCJ simply stated that the reason why Claimant missed work is not always clear. If the WCJ had realized there was a dispute and examined the evidence, the WCJ might have reached a different conclusion than that assumed by the WCAB.

Accordingly, I would vacate and remand for a reasoned decision.

---

require that Employer file a suspension petition.

4. Section 422(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834, provides, in pertinent part, as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review. 77 P.S. § 834.

5. The majority appears to agree, stating that the "WCJ was mistaken in his belief that there were no issues as to indemnity." (Majority at 347.) However, the majority then states that the WCJ decided the indemnity issue by finding that Employer made appropriate work available to Claimant. *Id.* This was not the indemnity issue presented to the WCJ. Claimant **agreed** that she should be able to do the work that Employer provided. (R.R. at 23a.) The real issue was whether Claimant's absences from work were related to her work injury, but the majority does not address that issue because Claimant did not file a reinstatement petition.

6. If a claimant has periodic absences from work and the employer questions whether the absences are related to the work injury, the claimant has the burden of proving that causal relationship. *YDC New Castle–PA DPW v. Workers' Compensation Appeal Board (Hedland)*, 950 A.2d 1107 (Pa.Cmwlth.2008).