**Robert HERSHGORDON, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PEPBOYS, MANNY, MOE and JACK and Zurich American Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 7, 2011.

Decided Feb. 8, 2011.

---

Robert Hershgordon, pro se.

Sherri L. Dougherty, Philadelphia, for respondent Pepboys.

Before LEADBETTER, President Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

■ Robert Hershgordon (Claimant) petitions, pro se, for review of the August 4, 2010 order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) denying him workers' compensation benefits pursuant to Section 311 of the Workers' Compensation Act (Act)[1] and dismissing his penalty petition. The issue before this Court is whether the Board erred in affirming the WCJ's decision that Claimant did not provide timely notice of his work-related injury to Pepboys, Manny, Moe and Jack (Employer). For the reasons that follow, we affirm the decision of the Board.

Claimant worked as a second assistant manager at Employer's Bensalem store beginning on February 28, 2005. On October 23, 2007, Claimant was discharged from his employment due to his treatment of employees and customers.[2] On November 26, 2007, Claimant filed a claim petition alleging that he injured his back and his right foot while working for Employer on June 13, 2005. He sought benefits as of October 23, 2007, and penalties as a result of Employer's failure to report his injury. Employer denied Claimant's claim, stating that Claimant did not timely report a work-related injury, and that he did not lose time from work as a result of a compensable work injury.

On January 8, 2008, April 29, 2008 and July 24, 2008, hearings were held before the WCJ at which Claimant testified and presented a January 20, 2008 medical report prepared by Gene Salkind, M.D. Employer presented the testimony of witnesses, Robert Gottenberg, Kevin Chesla, Timothy Thompson and Chris Watson, and submitted Claimant's medical file from Dr. Salkind, an independent medical evaluation (IME) report prepared by Leonard A. Brody, M.D. on April 16, 2008, and an IME report prepared by Richard G. Schmidt, M.D. on January 10, 2007. On March 4, 2008, Claimant filed a motion for summary judgment based upon Pa.R.C.P. No. 234.5, for Employer's failure to produce documents requested by Claimant.[3]

■ On January 28, 2009, the WCJ issued a decision and order denying the claim petition on the basis that Claimant failed to provide timely notice of a work-related injury, failed to show that the injury resulted in wage loss or medical treatment, and failed to show that Employer violated the Act. The WCJ also found that Employer established that Claimant's wage loss was due to his termination. Claimant appealed to the Board. On August 4, 2010, the Board issued an order affirming the decision of the WCJ. Claimant appealed to this Court.[4]

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 631.

2. Claimant began receiving unemployment compensation benefits on November 27, 2007.

3. Section Pa.R.C.P. No. 234.5 states, in pertinent part:

(b) If a party fails to comply with a subpoena, a notice to attend or a notice to produce, the court may enter any order imposing appropriate sanctions authorized by Rule 4019(c) and, if the failure to comply is for the purpose of delay or in bad faith, the court may impose on that party the reasonable expenses actually incurred by the opposing party by reason of such delay or bad faith, including attorney's fees. If the failure is wilful the court, after hearing, may adjudge the party to be in contempt.

4. "This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed." *World Kitchen, Inc.*

■ Section 311 of the Act states, in pertinent part:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe ... shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.

It is crucial to note that, "[w]hether an employee has complied with these notice requirements is a question of fact to be determined by the WCJ." *Scher v. Workers' Comp. Appeal Bd. (City of Phila.),* 740 A.2d 741, 749 (Pa.Cmwlth.1999). Moreover, the party prevailing below "is entitled to the benefit of all reasonable inferences from the record and to have the record read in the light most favorable to it." *Kerr v. Pa. State Bd. of Dentistry,* 599 Pa. 107, 121, 960 A.2d 427, 435 (2008).

Claimant testified in this case that, on June 13, 2005, he was pulling a pallet of product onto the sales floor when he tripped over a tire that had fallen from a nearby stack. The pallet ran over his right foot, and he fell and hit his head. He claims that Mr. Gottenberg, Employer's store manager, helped him up. Claimant testified that Mr. Gottenberg told him approximately a month after the accident that he took care of reporting it. However, Claimant heard nothing about the injury report from Employer or its insurer. Claimant did not seek medical treatment with any of Employer's workers' compensation panel physicians.

As a result of this accident, Claimant claims to have suffered pain in his foot, buttocks and head, but he continued to work without treatment and without re-striction. Claimant testified that although he was taking medication for pain, and he claims to have told Kevin Chesla on several occasions about having foot pain, he was able to perform his job up to the time his employment was terminated. Claimant did not request any accommodation until early September of 2007, when he felt he was unable to drive himself to an assistant manager's meeting approximately an hour from his store due to pain medication he was taking. His first written report of the June 13, 2005 incident was a September 11, 2007 email he sent to Timothy Thompson, Employer's eastern division Director of Human Resources, generally describing an injury he suffered "about two years ago." Notes of Testimony, January 8, 2008 at Ex. C–1. Claimant testified that the medications prescribed by Dr. Salkind, including Lyrica, Ultracet, Valium and Vicodin, caused him to experience memory loss and personality changes which led to his termination.

Claimant testified that he was examined by Dr. Salkind, a neurosurgeon, approximately four months after the June 2005 accident for complaints of right foot pain. Claimant had been treating with Dr. Salkind for a lumbar disc herniation and accompanying pain in his right foot which Claimant suffered on July 19, 2002 while he was previously employed by Pathmark. He underwent two back surgeries and, although he had been cleared to work, continued to treat with Dr. Salkind until his workers' compensation claim for that case was settled some time in 2007. Claimant's visits to Dr. Salkind up to the time his previous work injury claim was settled were paid for by Pathmark. Claimant submitted into evidence a report from Dr. Salkind dated January 20, 2008, which reflects that Claimant saw him in late fall of 2005 as a result of increased

*v. Workers' Comp. Appeal Bd. (Rideout),* 981 A.2d 342, 346 n. 5 (Pa.Cmwlth.2009).

right foot pain due to a work injury that occurred in June of 2005. An MRI in February of 2006 revealed "a significant disc herniation at L3–4 on the right" as a result of his June 2005 accident, which Claimant opted to treat with medication. Notes of Testimony, April 29, 2008 (4/29/08 N.T.) at Ex. C–5. Dr. Salkind opined that Claimant "is employable in a sedentary to light duty capacity but clearly nothing more." 4/29/08 N.T. at Ex. C–5.

Employer presented the testimony of Mr. Gottenberg, who stated on Employer's behalf that he does not recall Claimant sustaining an injury at work on June 13, 2005, or Claimant asking him to report a work injury to Employer's management or insurance carrier. To Mr. Gottenberg's knowledge, Claimant did not request medical treatment, and performed his regular job until the time Mr. Gottenberg left Employer in July of 2005.

Kevin Chesla, Mr. Gottenberg's successor as of August 1, 2005, testified for Employer that although he was aware that Claimant took medications, he did not know why. Mr. Chesla claimed that he was aware that Claimant suffered occasional bumps and bruises at work, but was never aware of a work injury suffered by Claimant on June 13, 2005 or any restrictions resulting therefrom. He recalled that Claimant performed his job without physical difficulty until he discharged Claimant on October 23, 2007. Mr. Chesla stated that Claimant's job was terminated due to incidents of aggression occurring over a two-year span for which verbal warnings had been given, and which culminated in a confrontation with a co-worker a few days before he was fired.

Chris Watson, Employer's human resource generalist, testified on Employer's behalf that he was contacted by the co-worker with whom Claimant had the confrontation. He investigated the incident, and spoke to Claimant who had no recollection of it. Mr. Watson was not aware at the time of his investigation or Claimant's termination that Claimant claimed to have suffered a work injury on June 13, 2005.

Mr. Thompson testified on Employer's behalf that he was contacted on or about September 7, 2007 by Claimant who was seeking to be excused from the assistant manager's meeting because medication he was taking for a foot injury made it impossible for him to drive there. Mr. Thompson told Claimant he would send him a copy of his job description, which Claimant should take to his physician and report back as to what parts of his job he could and could not do. Mr. Thompson sent Claimant the job description and several emails were exchanged between them. Mr. Thompson testified that the September 11, 2007 email Claimant claims to have sent him reporting his June 2005 injury did not reach him until Claimant re-sent it on October 23, 2007, perhaps due to issues with spam filters Employer had in place at that time. That email was the first notice Mr. Thompson received that Claimant had sustained a work injury two years prior. Soon after receiving the email, Mr. Thompson submitted the matter to risk management. He stated that there was no record in Employer's reporting system that Claimant reported a June 13, 2005 work injury.

Employer submitted into evidence Dr. Salkind's medical chart for his treatment of Claimant. According to Dr. Salkind's records, Claimant was complaining of right foot pain on February 8, 2005, just before he became employed by Employer. Dr. Salkind told him to continue the medications and return in six months. The records for Claimant's August 4, 2005 follow-up visit reflect that Claimant had similar right foot complaints and made no mention of a work injury in June. In fact,

notably, the report states that Claimant "really has not seen any change in his symptoms since January 2005." Notes of Testimony, July 24, 2008 (7/24/08 N.T.) at Ex. D–8. Dr. Salkind recommended Claimant continue his medications and return in six months. Claimant's follow-up visits with Dr. Salkind on February 2, 2006, September 19, 2006 and February 8, 2007 similarly revealed right foot complaints, with no mention of a work injury on June 13, 2005.

Employer submitted into evidence the report of an IME conducted by Dr. Schmidt at Pathmark's request on November 10, 2007. As with Dr. Salkind's reports, Dr. Schmidt's report failed to mention any history of a June 2005 work injury. Employer also submitted to the WCJ a report prepared by Dr. Brody, an orthopedic surgeon, who evaluated Claimant at Employer's request on April 16, 2008. Dr. Brody opined within a reasonable degree of medical certainty that "any symptomatology that [Claimant] currently has in his right lower extremity is related to his longstanding L5–S1 radiculopathy that predated the 6/13/05 incident in question." 7/24/08 N.T. at Ex. D–5.

Based upon this record, the WCJ held that Claimant failed to demonstrate by way of substantial evidence that he provided notice of a June 13, 2005 work injury within 120 days. First, Claimant failed to report any such injury until after his termination in 2007. In addition, the WCJ found that, in light of Claimant's significant pre-existing medical condition, Claimant was required, but failed, to present substantial medical evidence to show that a June 2005 work injury resulted in medical treatment or wage loss. Instead, the WCJ found that Claimant's wage loss as of October 23, 2007 was due to his discharge. Finally, the WCJ found that Employer presented a reasonable contest to Claimant's claim.

In reaching his conclusions, the WCJ rejected as inconsistent Claimant's testimony relating his medical treatment in 2005 to a June 2005 work injury, when he did not seek treatment for months thereafter, and even then made no mention of the injury to his treating physician. The WCJ deemed Claimant's testimony that he reported the June 2005 incident not credible, since he failed to follow up with his supervisors to assure the incident was reported in Employer's system, and waited until he faced termination to formally report it. WCJ declared irrelevant Claimant's testimony that he reported his medication use to Employer in September of 2007, since it does not establish he gave Employer notice of a June 2005 work injury within 120 days. Finally, the WCJ noted that, although Claimant claims that the medications prescribed by Dr. Salkind were causing him to experience memory loss and personality changes which led to his termination, Dr. Salkind's reports fail to mention any problems with Claimant's medications, and Claimant admitted that he was working his regular job without restrictions.

Because Dr. Salkind's records do not support the statement in his January 20, 2008 report that a June 13, 2005 injury was reported to him, the WCJ deemed Dr. Salkind's opinions not credible. The WCJ declared credible Dr. Brody's opinion that Claimant's back and right foot problems were due to his 2002 work injury at Pathmark, since it is consistent with the medical records discussing Claimant's symptoms before and after June 13, 2005. The WCJ also found Dr. Schmidt's report consistent with Claimant's failure to report a June 2005 work injury.

The WCJ also deemed credible the testimony of Mr. Gottenberg that he does not

recall Claimant being involved in an accident at work, reporting an accident, asking Mr. Gottenberg to report an accident, or seeking medical treatment. The WCJ likewise deemed credible Mr. Chesla's testimony that no work injury was reported to him, that Claimant never asked for medical treatment or submitted any medical notes, and that he did not know why Claimant took medications. The WCJ found credible Mr. Chesla and Mr. Watson's testimony that they did not know that Claimant was claiming a work injury at the time he was discharged, and that his termination was not related to a work injury. The WCJ also deemed credible Mr. Thompson's testimony that he did not receive Claimant's September 11, 2007 email, due to Employer's spam filter, and declared that, even if he had, Claimant's notice would not have been made within 120 days of June 13, 2005. Finally, the WCJ deemed credible Mr. Thompson's statements that the email was his first notice of a work injury, there was no report of a June 13, 2005 work injury in Employer's reporting system, and Claimant's discharge was not related to a work injury.

On appeal, Claimant argues that he was unable to meet his burden of proof because the WCJ failed to require Employer to provide him with the documentation he sought pursuant to Section 131.61 of the Board's Regulations, 34 Pa.Code § 131.61 (relating to the parties' exchange of information to be used to defend a workers' compensation case), and Pa.R.C.P. No. 234.5. Claimant also argues that the WCJ erred in denying his motion for summary judgment on the same issue. The record reveals, however, that the WCJ reviewed Claimant's discovery requests to Employer and found that Employer properly responded. The WCJ reasoned that there was no injury report in Employer's reporting system because no report was ever made. Moreover, the WCJ found Claimant failed to supply any evidence to support his claim that Employer violated the Act and, even if Employer may have failed to supply documents in a timely manner, that would not be a basis upon which to impose penalties. Finally, "the Pennsylvania Rules of Civil Procedure do not apply in workers' compensation proceedings...." *Romaine v. Workers' Comp. Appeal Bd. (Bryn Mawr Chateau Nursing Home),* 587 Pa. 471, 485, 901 A.2d 477, 485 (2006). Because there was sufficient evidence to support the WCJ's determination of this issue, the Board properly affirmed the WCJ's decision as to Employer's responses to Claimant's discovery requests.

 "It is well established that the WCJ is the ultimate fact finder and is empowered to determine witness credibility and evidentiary weight. The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster),* 760 A.2d 72, 76 (Pa.Cmwlth. 2000) (citation omitted). In addition, the reasoned decision requirement in "Section 422(a) [of the Act, 77 P.S. § 834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.),* 893 A.2d 191, 195 (Pa. Cmwlth.2006) (citation omitted). Claimant's disagreement with the WCJ's findings and credibility determinations are not grounds upon which this Court may reweigh evidence or substitute its judgment. In fact,

it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence

to support the findings actually made. We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence.

*Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd),* 933 A.2d 1095, 1101 (Pa.Cmwlth. 2007) (citations and quotation marks omitted).

We conclude from our review of the record that there was sufficient evidence to support the findings made by the WCJ. Thus, we find that the Board did not err by affirming the WCJ's conclusions and his denial of Claimant's claim and penalty petitions. Accordingly, the Board's August 4, 2010 order is affirmed.

## ORDER

AND NOW, this 8th day of February, 2011, the August 4, 2010 order of the Workers' Compensation Appeal Board is affirmed.